Good afternoon. I'm told we have a little problem with our sound system and what I told Ms. Dolan is that we'll try it. If it doesn't work, we'll turn it off and ask you to please speak up. Okay? We'll see how it goes. Mr. Tangred, you're up This case is about the simple choice that Iowa law presents to anyone who acquires a mortgage note. They can either register, record their interest with the county recording office, thereby ensuring the priority of their interest, or they may do nothing and risk losing priority to a subsequent purchaser. As pled below, the Mortgage Electronic Registration Systems, or MERS, represents an attempt by the defendant banks to have their cake and eat it, too. By using MERS, the defendant banks have avoided paying over $8 billion in recording fees to counties like Plymouth County while continuing to enjoy the benefits of priority that recording mortgage interest provides. Defendants have been unjustly enriched at the expense of these under Iowa law for the claims at issue here. In holding otherwise, a district court committed two critical errors. First, the district court incorrectly found that plaintiff's claims were founded on a purported requirement under Iowa law to record all mortgage assignments, which they were not. And second, the district court incorrectly held that under Iowa law, recordings are not needed to maintain first lien priority on mortgages, even if the assignment is not recorded. But that is not the law. I would address the first error first. The district court's dismissal order rested on a misapprehension of plaintiff's claims, that they relied on what the district court called an alleged but nonexistent legal requirement to record mortgages, that there is no requirement under Iowa law to record mortgage assignments, but that is not what this case is about. This distinction is important, and it undermines much of the support that the defendants rely upon in this appeal. One example is the decision of this circuit in Brown v. MERS, which the defendants have submitted this court via Rule 20HA. From that case, the operative language was, because Arkansas law does not impose a duty on assignees of real estate mortgages to record those assignments, Brown's state law unjust enrichment and ADTPA claims are not stated claims. So you see there that the basis for that decision was the lack of a recording requirement under Arkansas law. Because plaintiff's claims here do not rely on such a recording requirement, Brown is inapposite. In a number of other cases, the defendants' side are distinguishable for the same reasons. We identify them on pages 12 and 13 of our reply brief. Well, do you, are you saying that, so what is the basis of your claim? Why do they have, why should they pay recording fees? The basis of the claim is not that the defendants failed to record, but that they did initially record with the county recording office using MERS as the mortgagee. This was a misleading legal fiction. Under Iowa law, the mortgage follows the note. Every time a note is transferred, the purchaser of that note also becomes the new mortgagee. MERS is listed only as what has been centuries practice in Iowa county recording offices. Ordinarily, the mortgagee, him or herself must record in order to preserve first lien priority. This is illustrated by two cases we cited from the 19th century, I know, but this is because in the 20th century everyone learned not to fail to record their mortgages. But both those cases, the Parmenter case and the Anderson case, both illustrate how someone who acquired a note could lose their interest if they failed to record a mortgage. I guess I don't understand why, if you're not required to file it, what do you care? Whether they're a nominee or they don't file it at all, what difference does it make? If they had chosen not to record their interests at all, then they do so at their own peril. What they did do is misuse the county recording office as a way to get priority for their note assignments, but through what was honestly a sham, using MERS, an entity that has very few employees, very few assets, whose actions are actually, who can only act through what they call its officers and executives who are really just employees of the defendant banks that are members of MERS. This harmed the county. Wouldn't the remedy be the feeding of their priority? Not the payment of fees of the other S&Es? I'm sorry. Why are you asking for a remedy of paying recording fees for the S&Es? Why wouldn't the remedy just be to void their filing if it's some sort of illegal act or conspiratorial illegal act? They just lose their priority. Well, the Iowa recording statute hasn't been construed that way in any case that we're aware of, and I think... In other words, under Iowa law, it's not a sham to use MERS, and recognized as a valid recording. Right, right. I would hesitate to suggest that remedy only because of the harm that it might do to the trillions of dollars of assets bound up in... I think the Iowa Supreme Court has said that, so why is what they're doing wrong to the point that it gives you a basis for a claim, if they're doing something that's legal? Well, it's unjust, is what our claim rests on. It's unjust for the defendant banks to... Unjust to who? Unjust to the county, who is... Did your clients lose priority somehow on some kind of real estate matter because of the system? Our clients suffered two harms. One is failing to collect the recording fees that were paid back when recordings were made using the actual mortgagee rather than MERS, which is not the mortgagee. What difference does that make to the county? Because what if they just chose not to file them? The whole point of the notice recording system under Iowa law is to encourage recording, and this has been standard and universal practice for the whole 20th century up until... Right, but you said there's no requirement of filing, so what if they just don't file? How are you... If they're not required to file, how are you harmed? Because they just say, well, we're not going to file them. What if everybody in Iowa, from now on, decide we're not going to file mortgage? The law does not require them to file, but the bank's investors certainly demand that they present mortgages that have clear and good title. These investments in these mortgage-backed securities are sold on the basis that every mortgage has a good and clear title, and the only way that that can be assured is through the recording offices of each of the counties. The understanding that everyone has been operating on for the last 20 years or so... Do you represent any of these banks or investors? My worthy adversaries represent those banks, but... How can you speak for them or assert any kind of claim or right that they may have? I just don't see how your clients are in any way involved in any kind of discussion along the lines of what you're describing. What we allege... They're not impacted at all under this argument that you're making. The county's not impacted? The county is impacted because it doesn't get the recording fees that it would have been getting. That brings us in a circular fashion back to the original premise, which you've already acknowledged, that there is no requirement under Iowa law that these documents be filed and that those fees be paid. It's not a requirement, but it is a choice that Iowa law demands of each acquirer of a document that they cannot record and risk losing that interest to someone else. You're right, it's a choice, but what if they make the choice not to file and they come up with this other system, the MERS system or whatever it is, and it turns out somewhere down the line, you're right, they don't get priority. The banks don't have priority for whatever reason. Well, that's their problem. They made the choice to go into this system. How does it make any difference to the counties? They could have made the choice not to record at all and simply contract among themselves not to challenge the priority of the assignments that they make to each other. That's not what they chose, and as we have alleged in the complaint, they could not have been able to make that choice and continue to sell these investments as low-risk, secure investments. What they did instead was they did take advantage of the county recording system by making their initial recording, but that initial recording does not reflect who the true mortgagee is, and so the county's injured not only by the failure to collect recording fees, but also because their records are now no longer accurate. They do not show who the actual mortgagee is, and this is a problem not only for the county, but for the county's residents who want to know, like, who do I need to deal with if I have a problem with my mortgage? It's a problem for the state or the county who may want to investigate predatory lending practices. They have no idea who is actually acquiring these mortgages. What if the person who wants to do that goes to MERS and says, I see you have recorded this mortgage? Will MERS disclose to them which bank currently holds the note? First of all, the Iowa statute set up a system in the county recording offices so that someone can go to the government rather than to a private entity for something of public concern. Second of all, they go to the government and they see MERS, so they can get that information from the county. But the second point is that MERS has proven to be incredibly unreliable for many mortgages. Even MERS can't tell you exactly who because not all of MERS members register their assignments properly either. Well, so, but who's, how does that affect the county? The county has I mean, you may have some S&Es out there that may end up not having their security, having their mortgages valid or their assignments. They may be stuck, but that's their problem. Well, the county has an interest in protecting the interests of its residents and the interests of its residents are in having one clean set of property records in which they can investigate the chain of title. Yeah, but isn't that kind of what the Iowa Supreme Court wouldn't throw out this system? I mean, this is, I could see where the legislature might stop it and maybe the Iowa Supreme Court might stop it, but I don't see how the, how anybody else could do anything about it. The Iowa legislature has stopped it by passing statutes that present the choice that I described at the very beginning of my presentation. I'll reserve the remainder of my comments for rebuttal with the indulgence of the court. Thank you very much. Thank you. Good afternoon, Mr. Heffern. Good afternoon. May it please the court. Before I make a few remarks about our position, I would like to address the last question that came up regarding the position of the county that it's important, that the county's And there's really two responses to that, and I think they both have been talked a little bit about. I want to flesh it out a little bit. First of all, if, in fact, that was the law of Iowa, we would not have a permissive system, but we do have a permissive system. The judgment's been made that the system is not going to be a complete mandated chain of title for things like mortgages. Secondly, the question arose as to what borrowers can do and what borrowers can find out about their loan. First of all, they can contact MERS and find out who is the current owner of their mortgage. Secondly, under federal law, the Truth in Lending Act, they can contact the person who's servicing their loan, that is, collecting the payments. And under federal law, the servicer is required to identify who actually owns the loan. So with respect to that issue that came up, there is certainly recourse for the borrowers, and to the extent that the county or others would like a complete system that is a complete chain of title, that would be a question that I'd have to address the legislature asking our Iowa to abandon the permissive system and instead adopt the mandatory system. With respect to the merits of the claim, I would just make a few observations. As the district court correctly found, here there is no unjust enrichment because the only thing my clients are accused of doing is doing something that the Iowa law permits them to do, which is choose not to recourt. The plaintiffs concede that we have no obligation to record. And so our choice not to record is simply one that's permitted, and so if a consequence flows from that, it is not unjust. And as the court correctly found, that is sufficient to dispose of the case. This is entirely consistent with the Brown opinion that Judge Shepard authored recently involving Arkansas law. But in that case, as this court correctly held, when there is no duty to record, I'm quoting, quote, the lenders have retained nothing of value to which they are not entitled. And there is nothing that could be required to restore to the county. The district court properly dismissed the unjust enrichment claim. There was no assertion in response to the Rule 28J letter that Arkansas law of unjust enrichment is any different than Iowa law of unjust enrichment. And in fact, if you go look at the cases cited for Arkansas law in the Brown case, it's fully consistent with the cases under Iowa law. And in particular, the case the district court relied on called Lakeside Feeders. And so, at a minimum, under the par panel rule, there's some serious question about whether the court ought to simply just apply Brown and move on, even without delving into the details that we've gone out in the briefs. The briefs were done before Brown was decided, and so we didn't argue the case that way. But after Brown, plaintiff having not identified any basis for distinction between the law of the two states, there's no reason not to apply Brown and affirm here. Let me ask you this. Councilman Mr. Tangren has described his assessment of the unjust enrichment area and the need to record and so forth. But let me ask, was that argued in the district court? I mean, were these arguments that we've heard here argued to the district judge? Your Honor, the arguments, first of all, Brown was a case where the county was arguing there was a mandatory duty to record. This court, the district court there and this court here found there was no mandatory duty to record. But then, as you see from the opinion, this court went on and said, since there is no mandatory duty, there is no unjust enrichment because you're doing simply what you're allowed to do. We argued the Brown district court opinion in the district court. It had already come down. The arguments in the district court were consistent with the arguments we're presenting here. I would point out that the plaintiff did not really argue that the unjust aspect of this case turned on MERS being a sham. They really argued the unjust aspect of the case was that they just didn't get recording fees. And that's, of course, how we briefed the issue as well. Moving past Brown, the question is, if you want to try to identify an unjust enrichment, this court's decision in Iconco versus Jensen provides the useful standard, and this is in the brief. That is, in order to determine whether an enrichment to a defendant is unjust, the court needs to identify, under Iowa law, the court would need to identify some standard, some norm of fairness and justice which was violated. So, for example, someone violated a law or someone tricked a third party into paying money to him rather than to the plaintiff. There is no standard here that the plaintiff has identified, that the county's identified, that my client's choice not to record is somehow violated. There is, we had instead, my client's had a right not to record. And so actually the shoe is on the other foot. Not only is there no standard of justice and fairness violated in the Iconco sense, we actually are permitted to do what we did. And that's why the district court relied on the livestock feeders case. In livestock feeders, the defendant was able to prevail in an unjust enrichment claim under the law because it had a contractual right to keep the money. So this court held, as every court that I'm familiar with in other states hold, that you can't be sued in unjust enrichment if you did something you're allowed to do. My clients were permitted to not record, and therefore it was proper for the district court to find that there was no unjust enrichment. Fully consistent with Brown, even though the argument as to whether there was a duty to record was certainly much stronger there. But this court certainly can affirm based on Brown or confirm based upon the application of Iconco and livestock feeders. Either way, the court can get there quite easily. Now we have, I think, another series of arguments set forth in brief. And I won't dwell very much on it, it'll leave us to the briefs. But let me just make an observation about a lot of what the plaintiff says. A lot of what the plaintiff says is that my clients have done something that was perhaps unexpected, which is they have chosen not to record, and that maybe that's something different from how people operated for many, many years. We have to assume that fact to be true, because it's alleged and it was a motion to dismiss. But that does not make the enrichment, to the extent there's enrichment for not having to pay fees, that does not make the enrichment unjust. Most of the plaintiff's argument is to talk about how somehow my clients have been enriched because we haven't had to pay any fees. But clearly the MERS system benefits my clients, but not unjustly vis-a-vis the county. As many of your questions, Judge Riley raised, any concerns here that the plaintiff keeps raising are not concerns of the county. The county has not been disadvantaged by the system in a way that is unjust, even though my clients clearly have benefited from the system, they set the system up. It is not a recording system. It's a system whereby the county recording is still used in the state, but it's used in a different way. There's nothing that prohibits it. MERS is recognized in Iowa and elsewhere as being a legitimate entity, a legitimate way to hold mortgages. The county is simply disappointed that the legislature has not required recording. That's something that if they wanted to remedy, they'd have to go to the legislature. And this court certainly should not find that my clients acted unjustly. I'll just make a couple of quick observations as well. There are a number of tag along claims, that is claims that were derivative, conspiracy, injunctive, relief. Those clearly were correctly dismissed because they were entirely derivative. There was a declaratory judgment claim that the plaintiff makes an argument in the reply brief I'd like to address briefly. They claim while the court erred, district court erred in dismissing the declaratory judgment claim, because the counties were not looking to get recording fees through the declaratory judgment claim. They were looking for a declaration that there were gaps in the title by virtue of the MERS system. First of all, as we previously briefed, it is not the law that the declaratory judgment claim gives a standalone right to bring a cause of action if you don't otherwise have a claim. Furthermore, there can't be any claim for a declaration with respect to gaps of title, because this permissive system assumes that there may be gaps of title. And so there's no need to have a declaration about whether it's okay. That's the nature of the permissive system. And with respect to the other issues in the case, including the procedural issues regarding amendments, we'll just rest on our briefs. Do you acknowledge that there's a case in controversy, or do you urge the court to go through a standing analysis before we get to everything that's been discussed today? We do, your honor, urge the court to go through a standing analysis, so rest on my briefs in that regard. Well, no, I don't want you to rest on your briefs, because you're saying we have to take on a threshold issue, whether there's a case in controversy. If you're not serious about it, you could waive it, and then we could go to the merits. But if you're serious about it, I think you should argue, I'd like you to argue. I'm happy to, great. Yeah. Absolutely, Judge. Under Iowa law, a county recorder is only entitled to be paid fees if it renders a service of recording the document. That is, as you might imagine, someone goes into the recording office, presents an instrument. And then and only then, when the county recorder takes it for recording, does the county recorder have the entitlement to be paid the $5, $6 to record that instrument. Under Article 3, the county must show that it has suffered the invasion of a legally protected interest. It does not have a legally protected interest in the recording fees until my clients present an instrument for recording. So they could not sue. I wonder if that conflates the merits with the standing question. You're saying they don't have standing because they don't have any right to a fee. But their claim is that under rules of equity, they should be entitled to a fee, even though Iowa law doesn't require the recording that would trigger the fee. The question, the court does have to consider whether they have a legally protected interest. There is, I don't think they've pointed out any basis on which they could say they could be paid a fee. Unless they actually tender an instrument. And so, I wouldn't say it conflates the merits, because they're attempting to obtain payment for recording, I think measured by recording fees. But they can't get a recording fee unless they actually were tendered an instrument. So they have not argued the standing, they've not argued that they have a right to obtain a fee through any method other than the tender of an instrument. And so we would say that there's an article three problem here, because a county recorder can't get a fee unless it actually is asked to- Their argument is that through this sham mechanism that MERS has set up,  And if you didn't have the sham, then you would have to present the instruments and they would get the fees. And I understand your argument, it's not a sham and so forth, but I just wonder whether that goes to standing or to the merits. So that's why I wanted to hear you out on it. And I guess I would just say that it's undisputed as far as the briefing goes, that the payment of a fee in, and the law is, the payment of a fee in Iowa is predicated upon the rendering of a service. And so we could win the case on the grounds that they can't get, if we went to the merits, we could win the case by arguing as well that issue on the merits. But with respect to standing, it's a separate standing problem, because they have not, there's a legally, put it another way, I guess, Judge Carlton. The question is, is there a invasion of a legally protected interest? In some sense, that's always a merits question. There has to be a legally protected interest. A county recorder, we claim under Iowa law, has no legally protected interest in a fee without rendering a service. And so it conflates the merits in the sense that it requires the court to consider whether there's a legally protected interest. Well, on this view, should Brown have been dismissed for lack of jurisdiction? Is it pretty much the same problem there for standing? There's a standing problem. I know the court didn't discuss it. Yes, your honor. We argued the standing problems. We typically argue the standing problem in most of these county recorder cases. And I would fully admit that, as plaintiff points out, the cases that have decided, the district court cases that have decided this issue, have decided it against us. But in Brown, in our court, were you involved in that case, and did you argue standing there? I don't recall the briefs. I don't recall the briefs in the Brown case, to be honest, your honor, and that was not orally argued, I don't believe. Well, right. Right, so I don't have a personal recollection. Right. Okay, thank you. Okay, and I would say the other piece of the standing issue just is, do they have a legally protected interest in the other thing they're complaining about, which is the injury to the county records? And we, again, argue they have no legally protected interest in that because they don't purport, there's nothing in the statute, nor in any case that says they own the records. They maintain the records, but they don't own the records. They have no legally protected interest in, if there's any problem with the records, they have no legally protected interest that is infringed by the action of the defendant. It's kind of a chicken or the egg. You have to get to the merits to get to the standing, or do the standing get to the merits? Anyway. And that may be perhaps why the courts have generally passed through the standing issues and said that's really a merits issue and have gone on to the merits issues. Certainly my client urges the standing issue, but if the court finds they're standing, Brown and the other authorities we cited should support a judgment in our favor. Okay, thank you very much. Thank you, Your Honor. Mr. Tangren, you have 219. Thank you, Your Honor. Just to briefly respond on the Article 3 standing point. We're not aware of any single authority that has adopted the defendant's argument on this point, and we do believe that the economic harm in the recording fees and the non-economic harm in the records is sufficient to confer Article 3 standing here, as courts have unanimously found. I want to correct the way that the defendants have been misframing this case. This case is not about a failure to record. If the defendants had simply failed to record their mortgages, then we wouldn't be here today. What it's about is the defendants taking advantage of the county recording system. And much of this is alleged in the proposed amended complaint that the district court erroneously rejected. It's about the defendants taking advantage of the county recording system and recording once to get priority for that mortgage in a way that was improper by listing MERS rather than the true mortgagee. And in avoiding all of these excessive assignments that would have needed to be recorded under the Iowa statutory scheme. It would have been irresponsible and imprudent for the defendants not to record at all because of the investors' demands on the mortgage interest being secure. What they did do, however, was record once and then avoid the recording fees that they would have needed to pay for successive assignments through the use of MERS, and our argument is that that is unjust enrichment under Iowa law. It's a different theory than what this court analyzed in Brown. And we submit that it's a theory that states a valid claim for unjust enrichment under the standards of Rule 12B6. Thank you very much for your consideration. One quick question before you finish in it. It's not about the merits of the case. It's based on my interest in the rules of appellate procedure. I noticed in your brief, you used a technique that I haven't seen before. And that is that throughout the brief, you abbreviate or use an acronym of DC for district court. And I assume that's done because that minimizes the number of words you have to put into the brief. And therefore, you can make your brief longer than what the rules permit if you spell out district court. So my question is whether that's a regular practice of your firm, and whether you've seen it used by other parties, and whether it's been questioned by any clerk. I have seen it used before by other firms besides our own. It's not our firm's universal practice. But since we refer to the district court so often in this brief, we felt that it was simply a convenient way to abbreviate it so that people didn't have to read out district court every single time it was safe space. And it certainly wasn't an attempt to try to evade any more limitations. Okay, well, you thought it was just easier for the reader. That's correct, your honor. Well, I'm not, you might get a debate from some people about whether acronyms are easier on the reader than words. But I understand the sentiment, so. MERS is certainly easier. Well, MERS, yeah, fair point. Okay, thank you. Thank you. Okay, thank you both. We will take it under advisement and be back to you as soon as we can. Thank you. Be in recess till 9 AM tomorrow morning.